**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

STATE FARM FIRE AND
CASUALTY COMPANY,

        Plaintiff,

                                       Case No. 11-10237

v.                                   Hon. Gerald E. Rosen

CONAIR CORPORATION,

        Defendant.

_____/

**OPINION AND ORDER REGARDING**
**DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on _____June 27, 2011_____

PRESENT:  Honorable Gerald E. Rosen
                  Chief Judge, United States District Court

## I.  INTRODUCTION

Plaintiff State Farm Fire and Casualty Company, as subrogee of Michael and

Marilyn Kramer, commenced this action in this Court on January 20, 2011, asserting

state-law claims of breach of express and implied warranties, negligent design, negligent

manufacture, and violation of the Michigan Consumer Protection Act, Mich. Comp. Laws

§ 445.901 *et seq.,* against Defendant Conair Corporation.  Plaintiff's claims arise out of a

2008 fire at the Kramers' residence in Milford, Michigan, that allegedly was caused by a

coffeemaker designed and/or manufactured by Defendant.  This Court's subject matter

jurisdiction rests upon the parties' diverse citizenship. *See* 28 U.S.C. § 1332(a).

By motion filed on April 1, 2011, Defendant now seeks the dismissal of Count II of Plaintiff's amended complaint, in which Plaintiff has asserted a breach of implied warranty claim. In support of this challenge, Defendant appeals principally to the economic loss doctrine, arguing that Plaintiff's claim is governed exclusively by Michigan's enactment of the Uniform Commercial Code ("UCC"), and thus is time-barred by the UCC's four-year statute of limitations, Mich. Comp. Laws § 440.2725(1). Alternatively, to the extent that the Court does not accept this appeal to the economic loss doctrine, Defendant argues that Count II should nonetheless be dismissed because it purportedly is duplicative of other counts in Plaintiff's complaint.

Defendant's motion has been fully briefed by the parties. Having reviewed the parties' briefs in support of and opposition to Defendant's motion, as well as the remainder of the record, the Court finds that the pertinent facts, allegations, and legal issues are sufficiently presented in these written submissions, and that oral argument would not assist in the resolution of this motion. Accordingly, the Court will decide Defendant's motion "on the briefs." *See* Local Rule 7.1(f)(2), U.S. District Court, Eastern District of Michigan. This opinion and order sets forth the Court's rulings on this motion.

## II.  FACTUAL BACKGROUND

In August of 2008, the home of Michael and Marilyn Kramer in Milford, Michigan

2

sustained damage in a fire.[1]  The Kramers' residence was insured by Plaintiff State Farm Fire and Casualty Company, and Plaintiff retained fire investigators to determine the cause and origin of the fire.  The investigators concluded that the cause and origin of the fire was a Conair brand coffeemaker manufactured and/or designed by Defendant Conair Corporation.

According to Plaintiff's complaint, the fire caused over $1 million in damage to the Kramers' home.  Plaintiff paid the Kramers' insurance claim, and now seeks to recover this amount from Defendant as subrogee of the Kramers.  In support of this effort, Plaintiff has asserted state-law claims of breach of express and implied warranties, negligent design or manufacture, and violation of the Michigan Consumer Protection Act.[2]  Through the present motion, Defendant seeks the dismissal of one of these claims, arguing that Plaintiff's breach of implied warranty claim is either time-barred under the UCC or duplicative of Plaintiff's other product liability claims.

### III.  ANALYSIS

### A.    The Standards Governing Defendant's Motion

Through the present motion, Defendant seeks the dismissal of Count II of Plaintiff's complaint for "failure to state a claim upon which relief can be granted."  Fed.

---

[1]Plaintiff indicated in its initial complaint that this fire occurred on October 1, 2008, but now alleges in its second amended complaint that the fire occurred on August 31, 2008.

[2]As noted above, Plaintiff recently filed a second amended complaint.  This amended pleading generally retains the claims asserted in Plaintiff's initial complaint, with one limited exception discussed below.

3

R. Civ. P. 12(b)(6).[3]  When considering a motion brought under Rule 12(b)(6), the Court

must construe the complaint in the light most favorable to the plaintiff and accept all well-

pled factual allegations as true.  *League of United Latin American Citizens v. Bredesen*,

500 F.3d 523, 527 (6th Cir. 2007).  In this case, the pertinent allegations are not disputed,

at least for present purposes, and the disposition of Defendant's motion turns upon purely

legal issues.  Accordingly, the Court turns to these questions.

**B.   Plaintiff's Tort-Based Product Liability Claims Are Not Barred by the Economic Loss Doctrine.**

In Count II of its amended complaint, Plaintiff alleges that Defendant breached an

implied warranty by designing and/or manufacturing a coffeemaker that caused the fire at

the Kramers' residence.  The complaint does not indicate, however, whether this claim is

brought under the UCC or under tort-based product liability law.  Because Plaintiff is

seeking to recover only for property loss, and not personal injuries, Defendant argues that

the economic loss doctrine bars Plaintiff from proceeding under product liability law, and

instead limits Plaintiff to only a contract-based recovery governed by the UCC.  As

───────────────

[3]To be accurate, Defendant's motion is captioned as seeking partial summary judgment, and Defendant states that this motion is brought under both Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 56.  Yet, while Defendant's motion is accompanied by materials outside the pleadings, these exhibits are offered solely for the purpose of establishing when the Kramers purchased the coffeemaker that allegedly caused the fire at their home.  As noted below, this question relates solely to a UCC statute of limitations defense that the Court need not (and does not) address in resolving Defendant's motion.  Accordingly, because the materials outside the pleadings are not necessary to the disposition of Defendant's motion, the Court will decide this motion under the standards of Rule 12(b)(6).

discussed below, the Court cannot agree.[4]

In *Neibarger v. Universal Cooperatives, Inc.,* 439 Mich. 512, 486 N.W.2d 612 (1992), the Michigan Supreme Court addressed the economic loss doctrine, which the courts have invoked in certain classes of cases to require that disappointed purchasers of defective or non-conforming goods pursue their recoveries in contract rather than tort.[5] As the court observed, "[t]his doctrine hinges on a distinction drawn between transactions involving the sale of goods for commercial purposes where economic expectation are protected by commercial and contract law, and those involving the sale of defective products to individual consumers who are injured in a manner which has traditionally been remedied by resort to the law of torts." *Neibarger,* 486 N.W.2d at 615 (footnote with citations omitted). The court further explained:

> As developed by the courts, then, the individual consumer's tort remedy for products liability is not premised upon an agreement between the parties, but derives either from a duty imposed by law or from policy considerations which allocate the risk of dangerous and unsafe products to the manufacturer and seller rather than the consumer. Such a policy serves to encourage the design and production of safe products.
>
> On the other hand, in a commercial transaction, the parties to a sale

---

[4]Despite Defendant's appeal to the economic loss doctrine, its present motion is directed only at Count II of Plaintiff's amended complaint, and not the other counts in which Plaintiff is pursuing tort-based theories of recovery. Yet, the economic loss doctrine, if applicable here, seemingly would preclude Plaintiff from pursuing ***any*** such tort-based product liability claims, whether in Count II or the other counts of the complaint. The Court need not resolve this conundrum, however, in light of its conclusion that the economic loss doctrine does not apply.

[5]The parties here agree that Plaintiff's claims are governed by Michigan law, and that the application of the economic loss doctrine turns upon the decisions of the Michigan courts, as well as the federal courts construing these state court rulings.

> of goods have the opportunity to negotiate the terms and specifications,
> including warranties, disclaimers, and limitation of remedies. Where a
> product proves to be faulty after the parties have contracted for sale and the
> only losses are economic, the policy considerations supporting products
> liability in tort fail to serve the purpose of encouraging the design and
> production of safer products.

486 N.W.2d at 616. Upon surveying the case law from other jurisdictions, the court elected to adopt the economic loss doctrine as Michigan law, holding that "where a plaintiff seeks to recover for economic loss caused by a defective product purchased for commercial purposes, the exclusive remedy is provided by the UCC." 486 N.W.2d at 618.

Turning to the facts of the case before it, the court found that the economic loss doctrine barred the plaintiffs' tort claims, where the plaintiffs had suffered only economic losses arising from the "failure of a product purchased for commercial purposes to perform as expected." 486 N.W.2d at 620. Specifically, the plaintiffs in *Neibarger* were dairy farmers who purchased a milking system that allegedly caused illness and death among the farmers' cattle population, leading to decreased milk production. Under these facts, the court found it "apparent that the damages suffered by the plaintiffs are properly considered to be economic loss, the result of a defect in the quality of the milking systems they purchased." 486 N.W.2d at 621. Although the plaintiffs argued that the economic loss doctrine should not apply in cases where a defective product caused injury to property other than the product itself — in that case, the dairy cattle — the court disagreed:

> The proper approach requires consideration of the underlying policies of tort and contract law as well as the nature of the damages. The essence of a warranty action under the UCC is that the product was not of the quality expected by the buyer or promised by the seller. The standard of quality must be defined by the purpose of the product, the uses for which it was intended, and the agreement of the parties. In many cases, failure of the product to perform as expected will necessarily cause damage to other property; such damage is often not beyond the contemplation of the parties to the agreement. Damage to property, where it is the result of a commercial transaction otherwise within the ambit of the UCC, should not preclude application of the economic loss doctrine where such property damage necessarily results from the delivery of a product of poor quality.

486 N.W.2d at 620 (footnotes with citations omitted).

On its face, the decision in *Neibarger* evidently does not control here, because the court expressly limited the application of the economic loss doctrine to cases in which "a plaintiff seeks to recover for economic loss caused by a defective product purchased ***for commercial purposes.***" 486 N.W.2d at 618 (emphasis added). Plainly, the Kramers did not purchase their allegedly defective coffeepot "for commercial purposes," and nothing in *Neibarger* suggests that the court intended the economic loss doctrine to reach consumer purchases. Nonetheless, in *Sherman v. Sea Ray Boats, Inc.,* 251 Mich. App. 41, 649 N.W.2d 783 (2002), the Michigan Court of Appeals invoked the doctrine to bar tort-based product liability claims brought by a consumer who complained that a boat manufactured by the defendant began to decay well before the end of its expected 25-year life span. In so ruling, the court reasoned that "while a consumer should not be charged with bearing the risk of physical injury from a product, the consumer may be charged with the risk that the product will not match his economic expectations." *Sherman,* 649

7

N.W.2d at 786.  More generally, the court appealed to the principle of Michigan law that "an action in tort may not be maintained where a contractual agreement exists, unless a duty, separate and distinct from the contractual obligation, is established."  649 N.W.2d at 789.  Because the plaintiff consumer in *Sherman* had not identified a duty separate and distinct from the defendant manufacturer's contractual obligation to build a boat with a useful life of at least 25 years, and because the plaintiff's claimed damages arose "not from physical harm, but loss of economic expectation in the product," the court found that the plaintiff was limited to a contract-based recovery.  649 N.W.2d at 790.

*Sherman's* application of the economic loss doctrine to a consumer transaction, though "lacking the controlling force" of a Michigan Supreme Court ruling, nonetheless "serve[s] as a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise."  *Ziebart International Corp. v. CNA Insurance Cos.,* 78 F.3d 245, 250-51 (6th Cir. 1996) (internal quotation marks and citations omitted).  In this case, however, the Court need not decide whether the Michigan Supreme Court would endorse *Sherman's* extension of the economic loss doctrine to at least some consumer transactions, because *Sherman* is readily distinguishable in two key respects.

First, the consumer in *Sherman* complained only of disappointed economic expectations — namely, that the boat she had purchased began to decay more quickly than promised, either expressly or impliedly, in the contract of sale with the manufacturer. Here, however, Plaintiff's product liability claims rest upon alleged property damage

8

sustained in a fire, an injury which is wholly separate and distinct from any disappointed economic expectations that a coffeemaker failed to perform as anticipated.  In contrast to the losses suffered by the boat purchaser in *Sherman* and the dairy farmers in *Neibarger*, there is no basis for believing that fire damage to the Kramers' home "was within the contemplation of the parties" when the Kramers purchased their coffeemaker, such that "the occurrence of such damage could have been the subject of negotiations between" the Kramers and Defendant as they made this purchase.  *Neibarger,* 486 N.W.2d at 620.  Thus, invoking the economic loss doctrine in this case would not serve one of its key objectives — namely, to encourage the parties to a sale of goods to avail themselves of the "opportunity to negotiate the terms and specifications" of their transaction, "including warranties, disclaimers, and limitation of remedies."  *Neibarger,* 486 N.W.2d at 616.

Next, while the court in *Sherman* was unable to identify a duty owed by the defendant boat manufacturer that was separate and distinct from its contractual obligation to deliver a product that met the plaintiff's economic expectations and the specifications set forth in the contract of sale, the tort-based claims asserted by Plaintiff in this case rest upon alleged breaches of distinct duties imposed upon designers and manufacturers of consumer products under Michigan product liability law.  As the Michigan Supreme Court has explained, an "individual consumer's tort remedy for products liability is not premised upon an agreement between the parties, but derives either from a duty imposed by law or from policy considerations which allocate the risk of dangerous and unsafe products to the manufacturer and seller rather than the consumer."  *Neibarger,* 486

9

N.W.2d at 616.  In both *Neibarger,* 486 N.W.2d at 621, and *Sherman,* 649 N.W.2d at

790, the Michigan courts found that the economic interests protected by the UCC and

contract law were sufficient to redress the injuries claimed by the plaintiffs, and that no

countervailing product safety concerns would be advanced by allowing the plaintiffs to

pursue a tort-based recovery.  Here, in contrast, the losses claimed by Plaintiff on behalf

of the Kramers are not limited to disappointed economic expectations arising from a non-

performing coffeemaker, but instead rest upon allegations of a dangerous and unsafe

consumer product that caused unanticipated harm to the Kramers' property.  These

allegations implicate tort-based policy concerns, and traditionally have given rise to

duties that may be enforced through tort-based product liability claims.

Other courts have distinguished *Sherman* on precisely these grounds, under facts

that are similar to those presented here.  In *Safeco Insurance Co. of America v. CPI*

*Plastics Group, Ltd.,* 625 F. Supp.2d 508, 510-11 (E.D. Mich. 2008), for example, the

plaintiff insurer brought both UCC and tort claims as subrogee of homeowners Gregory

and Rachel Shepard, seeking to recover from the defendant manufacturer of outdoor deck

materials for losses suffered when the Shepards' deck caught fire and the fire spread to

their adjoining residence.  The court rejected the defendant's appeal to the economic loss

doctrine, concluding that *Sherman* was "readily distinguishable":

> The plaintiff [in *Sherman*] asserted a tort theory based on nonfeasance, and
> claimed no damage other than the loss of beneficial use of the product itself
> (after 13 years of use without injury to persons or other property[]).  The
> Plaintiff in this case asserts a classic products liability claim in Count I,
> alleging that Defendant manufactured and sold an unreasonably dangerous

10

> product which caused extensive damage to property other than the product
> itself.  I am satisfied that the facts of the case at bar will support a tort based
> products liability claim.

*Safeco Insurance,* 625 F. Supp.2d at 520;[6] *see also Republic Insurance Co. v. Broan*

*Manufacturing Co.,* 960 F. Supp. 1247, 1251 (E.D. Mich. 1997) (declining to invoke the

economic loss doctrine in a case where a ceiling fan overheated and ignited, causing

substantial fire damage to a private residence, and reasoning that the imposition of tort

liability against the defendant manufacturer "would further the purposes of product

liability law, such as ensuring that manufacturers carry out their duty to design and

produce safe products utilized in personal residences and allocating the risk of

dangerousness and unsafe products to the manufacturer as opposed to individual

consumers").

More recently, the Michigan Court of Appeals held, in an unpublished decision,

that the economic loss doctrine did not bar tort-based product liability claims arising from

damage caused to a residence when a Ford F-150 pickup truck caught fire while parked in

an adjacent garage.  *See State Farm Fire & Casualty Co. v. Ford Motor Co.,* No. 287512,

---

[6]Defendant here faults the court in *Safeco Insurance* for "inexplicably" characterizing the nature of the damages in *Sherman* as limited to "the loss of economic expectations in the product."  (Defendant's Motion, Br. in Support at 12 (quoting *Safeco Insurance,* 625 F. Supp.2d at 512).)  Yet, *Sherman* expressly states that the "nature of damages" in that case arose "not from physical harm, but ***loss of economic expectation in the product."*** *Sherman,* 649 N.W.2d at 790 (emphasis added).  Having reviewed these two cases, this Court is confident that Judge Murphy's decision in *Safeco Insurance* accurately characterizes both the facts and the ruling in *Sherman,* and that the two cases are distinguishable on the grounds identified in *Safeco Insurance* — grounds which, as explained, also serve to distinguish *Sherman* from the present case.

11

2010 WL 866149 (Mich. Ct. App. Mar. 11, 2010). In that case, as here, plaintiff State

Farm brought tort and UCC claims against Ford as subrogee of the homeowners, Chris

and Julie Sredzinski, after the insurer's investigators determined that "the fire originated

in the engine compartment of the Ford F-150 and was caused by a defective cruise control

deactivation switch." *State Farm,* 2010 WL 866149, at *1. The court found that

*Sherman* was distinguishable, and thus did not mandate the application of the economic

loss doctrine:

> In *Sherman,* the Court emphasized that the plaintiff's losses arose out of her
> disappointed economic expectations relative to the useful life of a boat that
> simply did not stand the test of time and incurred decay. Such is not the
> situation here, where the F-150 became engulfed in a fire due to an alleged
> defect. This is not a case in which the vehicle merely failed to live up to
> economic expectations held by the purchasers. The Sredzinskis would not
> be properly characterized as purchasers who were disappointed that the F-
> 150 did not run for as many miles as hoped for when it was purchased due
> to wear and tear that occurred prematurely because of faulty craftsmanship.
> It would simply be inaccurate to describe State Farm's case as one in which
> the purchasers' expectations in the sale were frustrated because the F-150
> did not work properly; *the F-150 actually ignited.* We also note that
> *Neibarger* stated that a consumer's tort remedy for products liability derives
> from a duty imposed by law or from policy considerations that allocate the
> risk of dangerous and unsafe products to the manufacturer rather than the
> consumer, thereby serving to encourage the design and production of safe
> products. Allowing State Farm's action to proceed outside of the UCC
> would serve the purpose of encouraging the design and production of safer
> cruise control deactivation switches.

2010 WL 866149, at *5 (citations omitted).[7]

_____

[7]In a concurring opinion, Judge (now Michigan Supreme Court Justice) Zahra questioned
whether *Sherman* had "improperly expanded the economic loss doctrine to consumer
transactions," in a manner "inconsistent with our Supreme Court's reasoning in *Neibarger.*"
*State Farm,* 2010 WL 866149, at *6-*7 (Zahra, J., concurring). The majority, however, found it
unnecessary to address this issue, in light of the court's ruling "that the economic loss doctrine

Upon surveying this case law, the Court readily concludes that the facts and circumstances presented here do not trigger the application of the economic loss doctrine. The Kramers did not purchase the coffeemaker at issue for "commercial purposes" as required under *Neibarger.* The claims brought by Plaintiff as subrogee of the Kramers are not based on mere disappointed economic expectations that the coffeemaker did not work as expected. Moreover, the damage this coffeemaker allegedly caused to the Kramers' residence would not have been within the contemplation of the parties at the time the Kramers made their purchase, nor was this a harm of the sort that would have been the subject of negotiations between the parties prior to this consumer purchase. Rather, the damage allegedly inflicted on the Kramers' property by Defendant's allegedly defective product is of the nature that traditionally implicates a manufacturer's duty to design and produce safe products, and that ordinarily may be redressed through a tort-based product liability suit. Consequently, the Court finds that Defendant's appeal to the economic loss doctrine is misplaced.[8]

---

does not bar State Farm's suit regardless of whether a consumer or commercial transaction was involved." 2010 WL 866149, at *4 n.4.

   [8]To the extent that Plaintiff's breach of implied warranty claim in Count II of its amended complaint rests upon the UCC rather than tort-based product liability law, Defendant argues in its motion that any such UCC claim would be time-barred under the UCC's four-year statute of limitations, Mich. Comp. Laws § 440.2725(1). This issue is now moot, however, in light of Plaintiff's filing of a second amended complaint that clarifies that Count II, the breach of implied warranty claim, is brought exclusively under tort law and is "subject to Michigan's Product Liability statute." (Second Amended Complaint at ¶ 26.) Thus, Plaintiff evidently has abandoned any UCC-based breach of implied warranty claim that arguably was asserted in its earlier pleadings.

13

**C.**     **Plaintiff's Breach of Implied Warranty Claim Is Consistent with, And Not Supplanted by, the Michigan Product Liability Statute.**

Alternatively, in the event — as the Court has now held — that Plaintiff's tort-based breach of implied warranty claim is not barred by the economic loss doctrine, Defendant contends that any such "common law" cause of action for breach of implied warranty has been supplanted by a Michigan legislative enactment governing product liability claims, Mich. Comp. Laws § 600.2945 *et seq.*  This argument, however, has been rendered largely moot by developments since Defendant filed its motion.  Specifically, in its second amended complaint, Plaintiff expressly acknowledges that its breach of implied warranty claim is governed by and subject to the Michigan product liability statute.  (*See* Second Amended Complaint at ¶ 26.)  Thus, to the extent Defendant suggests that Plaintiff is seeking to evade the requirements of the statute by pursuing a "common law" breach of implied warranty claim, Plaintiff's most recent statement of this claim obviates Defendant's concern on this point.

This leaves only the question whether the Michigan product liability statute has somehow extinguished any possible cause of action Plaintiff could bring for breach of an implied warranty, leaving Plaintiff solely to the other product liability theories advanced elsewhere in its complaint — namely, its claims of negligent design and manufacture asserted in Count III of the second amended complaint.  As observed in Plaintiff's response to Defendant's motion, the Michigan Supreme Court has expressly held otherwise, stating in a 1984 ruling that "[w]e do not suggest that implied warranty and

14

negligence are not separate and distinct theories of recovery, or that the Michigan products liability statute has merged all former products liability theories or causes of action into a single unified 'products liability theory.'" *Prentis v. Yale Manufacturing Co.,* 421 Mich. 670, 365 N.W.2d 176, 186 (1984) (citations and footnote omitted). Nonetheless, Defendant suggests — albeit without citation to any authority — that the ruling in *Prentis* is now "obsolete," (Defendant's Reply Br. at 5), in light of the extensive 1996 amendments to Michigan's product liability statute.

The Court is confident that the above-quoted passage from *Prentis* remains an accurate statement of Michigan law, in light of the many post-1996 decisions that continue to recognize the viability of an implied warranty theory of recovery under the current version of the Michigan product liability statute. In *Bouverette v. Westinghouse Electric Corp.,* 245 Mich. App. 391, 628 N.W.2d 86, 90 (2001), for example, the Michigan Court of Appeals flatly stated that "the theories of negligence and implied warranty remain separate causes of action with different elements." The Court of Appeals then reiterated this point in *Kenkel v. Stanley Works,* 256 Mich. App. 548, 665 N.W.2d 490, 496 (2003), and in a more recent unpublished decision, *see Crawford-Sachs v. Goodyear Tire & Rubber Co.,* No. 271052, 2007 WL 948688, at *1 (Mich. Ct. App. Mar. 29, 2007). Defendant has not cited any authority that would call into question this line of Michigan court rulings.[9]

---

[9]Although Defendant has not identified any such rulings, the Court's own research has uncovered the decision in *Croskey v. BMW of North America, Inc.,* 532 F.3d 511, 520-21 (6th

A number of recent federal district court decisions have arrived at this same view of Michigan law. In *Norton v. Auto Club Group Insurance Co.,* No. 04-40376, 2009 WL 884129, at *15-*21 (E.D. Mich. Mar. 30, 2009), for instance, the court rejected the argument by the defendant manufacturer of an allegedly defective toaster that the elements of a breach of implied warranty claim and negligence-based product liability claim had been merged under Michigan's product liability statute. After extensively surveying *Prentis, Kenkel,* and a number of other rulings, the court held, under the facts of that case, that the plaintiff's breach of implied warranty and design defect claims had distinct elements and did not require the same proofs. *Norton,* 2009 WL 884129, at *20-*21. Similarly, in *Auto Club Group Insurance Co. v. All-Glass Aquarium Co.,* 716 F. Supp.2d 686, 689-90 (E.D. Mich. 2010), the court cited negligence and implied warranty as two separate theories of recovery available under Michigan law, and it noted the distinct elements that must be shown under these two theories. Consequently, Defendant's claim of "merger" of Plaintiff's implied warranty and negligent design/negligent manufacture theories of recovery is defeated by the uniform weight of the pertinent Michigan and federal court decisions on this subject.

## IV. <u>CONCLUSION</u>

For the reasons set forth above,

---

Cir. 2008), in which the Sixth Circuit found that Michigan's product liability statute has merged the elements of implied warranty and negligence-based theories of recovery as to product liability claims against ***non-manufacturing sellers.*** Because Defendant is alleged to be the designer and/or manufacturer of the allegedly defective coffeemaker, *Croskey* (and the provision of the Michigan product liability statute upon which it relies) is not applicable here.

16

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendant's April 1, 2011

motion for partial summary judgment (docket #11) is DENIED.


s/Gerald E. Rosen
Chief Judge, United States District Court

Dated:  June 27, 2011

I hereby certify that a copy of the foregoing document was served upon counsel of record on June 27, 2011, by electronic and/or ordinary mail.

s/Ruth A. Gunther
Case Manager

17